IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN E. SHAUNFIELD, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-4686-M (BH) |
| | § | |
| EXPERIAN INFORMATION | § | |
| SOLUTIONS, INC., | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the Special Order No. 3-251, this case was automatically referred for pretrial management. Before the Court are *Defendant Radiology Associates of North Texas' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)*, filed May 1, 2013 (doc. 44), *Defendant American Honda Finance Corp.'s Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted and Brief in Support*, filed May 3, 2013 (doc. 49), *Defendant Credit Systems International, Inc.'s Motion to Dismiss Under FRCP 12(b)(6)*, filed May 17, 2013 (doc. 60), and *Defendant Experian Information Solutions, Inc.'s Motion for Judgment on the Pleadings and Brief in Support*, filed July 11, 2013 (doc. 78). Based on the relevant filings and applicable law, Radiology's, AHFC's, and CSI's Rule 12(b)(6) motions to dismiss (docs. 44; 49; 60) should be **GRANTED,** and Experian's Rule 12(c) motion for judgment on the pleadings (doc. 78) should be **GRANTED in part and DENIED in part.**

## I. BACKGROUND

On July 2, 2012, John E. Shaunfield (Plaintiff) filed this *pro se* action against Experian Information Solutions, Inc. (Experian) in state court, asserting claims for defamation and violations of the federal Fair Credit Reporting Act (FCRA) and the Texas Business and Commerce Code.

(Orig. Compl. (doc. 1-1) at 7–10.)[1]  All the claims were premised on his allegations that Experian repeatedly provided credit reports containing inaccurate information about him to various entities. (*Id.* at 8–9.)  He seeks damages "in excess of one million dollars," attorney's fees, and court costs. (*Id.* at 10.)

After Experian removed the case to federal court, Plaintiff amended his complaint as a matter of course on September 25, 2012, to assert additional facts in support of his claims against Experian. (First Am. Compl. (doc. 11).)  With leave of Court, he filed his second amended complaint on March 27, 2013, adding numerous defendants[2] and making additional factual allegations.  (Second Am. Compl. (doc. 34).)  The second amended complaint asserts that Experian maintained and repeatedly disseminated two different credit reports under Plaintiff's name, one with the wrong birth date and incorrectly showing that he had no or "limited" credit history, and the other one containing numerous inaccurate credit items furnished to Experian by the other Defendants.  (*Id.* at 2–5.)  He claims that he tried unsuccessfully for several years to resolve these inaccuracies with Experian and submitted legal documents in support.  (*Id.* at 2–3.)  Although Experian allegedly corrected many of the errors in a credit report dated July 27, 2011, by April 30, 2012, it had deleted the correct information, "refuse[d] to recognize [Plaintiff's] documents as accurate," and continued reporting "grossly inaccurate information."  (*Id.* at 4.)  After Plaintiff filed another dispute in September 2012, Experian conducted an investigation and notified the other Defendants of his dispute.  (*Id.* at 4–5.)

---

[1]  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2]  Plaintiff added the following Defendants in his second amended complaint: FIA Card Services, N.A. (FIA) (incorrectly named as Bank of America); AFNI, Inc. (AFNI), American Honda Finance Corp. (AHFC), Verizon Communication, Inc. (Verizon), Credit Systems International, Inc. (CSI), Radiology Associates of North Texas (Radiology), Midland Credit Management, Inc. (Midland), and Paramount Recovery Systems (Paramount).  (doc. 34 at 1–2.)

On October 24, 2012, Experian provided Plaintiff with the results of its investigation, which allegedly showed that none of the other Defendants corrected the disputed items and that Experian still maintained two, inaccurate credit files under his name.  (*Id.* at 5.)[3]

Radiology, AHFC, and CSI now move to dismiss the second amended complaint for failure to state a claim.  (docs. 44; 49; 60.)[4]  Experian moves for judgment on the pleadings.  (doc. 78.)  The motions are ripe for recommendation.

## II.  APPLICABLE STANDARDS

Radiology, AHFC, and CSI move to dismiss Plaintiff's second amended complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (docs. 44; 49; 60.) Experian moves for judgment on the pleadings pursuant to Rule 12(c).  (doc. 78.)

### A.    Rule 12(b)(6)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must

---

[3]  On June 6, 2013, nearly three months after the deadline for amending pleadings had expired, Plaintiff filed a motion for leave to amend his complaint for the third time.  (*See* doc. 67.)  This motion is addressed separately.

[4]  FIA, Midland, and Verizon were dismissed pursuant to stipulated dismissals.  (docs. 80–81; 99–100; 111.) Paramount has not appeared in the case, and on October 10, 2013, the Court Clerk entered a default against it.  (doc. 95.)

show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation marks omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

**B.    Rule 12(c)**

Federal Rule of Civil Procedure 12(c) provides a means "to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the

-4-

substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citation omitted).  The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  As with a Rule 12(b)(6) motion, the question under Rule 12(c) is whether the plaintiff is entitled to offer evidence to support his claim, not whether he will ultimately prevail on the merits. *Great Plains Trust*, 313 F.3d at 313. Unlike a motion under Rule 12(b)(6), however, a party may file a motion under Rule 12(c) "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).

### III.  EXPERIAN

Plaintiff brings claims against Experian for defamation and violations of §§ 1681i(a) and 1681e(b) of the  FCRA and  §§ 20.06(d),(e) of the Tex. Bus. & Comm. Code.  (doc. 34 at 3–8.)

A.      **FCRA Claims**[5]

"Congress enacted the FCRA in 1970 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'"  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681(b)).  Among other things, the Act "require[s] that consumer reporting agencies[6] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of

---

[5]  Although these claims are listed second in the complaint, they are addressed first because the analysis provides background for Experian's argument regarding FCRA preemption of the state law claims.

[6]  The FCRA defines a "consumer reporting agency" as:
  [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.
15 U.S.C.A. § 1681a(e) (West 2010).

such information." 15 U.S.C.A. § 1681(b); *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 465 (5th Cir. 2006).  Although "the FCRA primarily regulates consumer credit reporting agencies, the statute also creates various obligations on 'furnishers of information'[7] to provide accurate information to consumer credit reporting agencies."  *Smith v. Nat'l City Mortgage*, No. A-09-CV-881 LY, 2010 WL 3338537, at *15 (W.D. Tex. Aug. 23, 2010) (citation omitted); 15 U.S.C.A. § 1681s-2.

### 1.    *Section 1681i: Reasonable Reinvestigation*

Experian construes the complaint as asserting a claim under 15 U.S.C. § 1681i for failing to conduct a reasonable reinvestigation into Plaintiff's dispute.  (doc. 78 at 10–12.)  It argues that any such claim fails and should be dismissed because it is factually unsupported.  (*Id.*)  It also contends that the complaint shows it conducted a reasonable reinvestigation.  (*Id.* at 14.)

"The FCRA imposes a duty upon consumer reporting agencies to conduct a reasonable [re]investigation into any information that a consumer disputes and that the agencies retain in his file."  *Williams v. Credit Prot. Ass'n Trans Union, LLC*, No. CIV.A. 3:09-CV-1146-L (BH), 2009 WL 3719407, at *3 (N.D. Tex. Nov. 3, 2009) (citing 15 U.S.C. § 1681i; *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986)).  Specifically, if a consumer directly or indirectly disputes "the completeness or accuracy of any item of information" contained in his consumer file "at a consumer reporting agency," "the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."  15 U.S.C.A. § 1681i(a)(1)(A).  Within 30 days of notice of the dispute, the agency must either record the current status of the disputed

---

[7]   The FCRA does not define "furnisher of information."  Courts in the Fifth Circuit "have defined the term broadly to mean 'an entity [that] transmits information concerning a particular debt owed by a consumer to a consumer reporting agency.'" *Alam v. Sky Recovery Services, Ltd.*, No. Civ.A. H-08-2377, 2009 WL 693170 at * 4 (S.D. Tex. Mar. 13, 2009) (quoting *Thomasson v. Bank One*, 137 F. Supp. 2d 721, 722 (E.D. La. 2001)).

information or delete the information if it is inaccurate, incomplete, or unverifiable. *Id.*; *Cousin v. Trans Union Corp.*, 246 F.3d 359, 367 n.11 (5th Cir. 2001). The agency must also notify the furnisher of the disputed information of the consumer's dispute within five business days of being notified by the consumer. 15 U.S.C.A. § 1681i(a)(2). In conducting the requisite reinvestigation, the agency must "review and consider all relevant information submitted by the consumer." *Id.* § 1681i(a)(4). A negligent violation of § 1681i subjects the agency to actual damages[8] resulting from the violation, court costs, and reasonable attorney's fees. *Id.* § 1681o; *Pinner*, 805 F.2d at 1262. A willful violation subjects the agency to statutory and punitive damages as well. 15 U.S.C.A. § 1681n(a)(2); *Pinner*, 805 F.2d at 1262.

a.   <u>Inaccurate Information</u>

Experian first argues that Plaintiff's claim under § 1681i is subject to dismissal because "[a]part from his allegations regarding the incorrect birth date, Plaintiff provides no further detail on the inaccurate credit information that has led to his alleged damages." (doc. 78 at 13.)

The second amended complaint asserts that in the course of reviewing his credit, Plaintiff obtained a credit report from Experian[9] that contained the wrong date of birth and erroneously indicated that he had "no" or "limited credit history." (doc. 34 at 3.) He tried unsuccessfully for several years to resolve these inaccuracies and submitted legal documents in support. (*Id.*) After he filed a dispute on July 5, 2011, Experian corrected many of the errors in a credit report dated July

---

[8] Actual damages include "out-of-pocket losses", injury to credit reputation, and intangible damages such as embarrassment, humiliation, and mental distress. *Pinner*, 805 F.2d at 1265; *Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 148 (5th Cir. 1983); *Zala v. Trans Union, LLC*, No. CIV. A. 3:99-CV-0399, 2001 WL 210693, at *6 (N.D. Tex. Jan. 17, 2001) (Fitzwater, C.J.).

[9] According to the second amended complaint, "Experian is a consumer reporting agency." (doc. 34 at 6.) Experian concedes this assertion. (doc. 78 at 6.)

27, 2011. (*Id.*) By April 30, 2012, however, Experian "had deleted all [of] the correct[]
information" and reinserted the inaccurate items into the report. (*Id.* at 4.) In September 2012,
Plaintiff discovered that "Experian had two different credit reports" under his name, one with the
wrong date of birth and showing "no credit history," and another "more detailed" one providing the
correct birth date but "also show[ing] negative incorrect information" furnished by the other
Defendants. (*Id.* at 4–5.)

Section 1681i(a)(1)(A) expressly states that "*any item of information* contained in a
consumer's *file* at a consumer reporting agency" may be disputed by the consumer and does not limit
any such items to "credit" items or items that are part of a "consumer report."[10]  *See* 15 U.S.C.A.
§ 1681i(a)(1)(A) (emphasis added); *see also Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp.
2d 1330, 1334 (S.D. Fla. 2011) (explaining that "section 1681i(a) does not directly concern the
accuracy of [consumer] *reports* but instead creates an obligation for the [consumer reporting agency]
to maintain an accurate [consumer] *file*"; also underscoring the difference between a "consumer file"
as used in § 1681(a)(1)(A) and a "consumer report" as used elsewhere in the FCRA) (emphasis in
original).  Ultimately, even if § 1681i(a)(1)(A) limited disputable information to credit items that
compose a consumer report, taken as true for purposes of Experian's motion, Plaintiff's allegation
that one of the two reports erroneously showed he had "no" or "limited credit history" raises a
reasonable inference that Experian maintained and reported inaccurate credit information about

---

[10]  A "consumer report" is

[A]ny written, oral, or other communication of any information by a consumer reporting agency
bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general
reputation, personal characteristics, or mode of living which is used or expected to be used or collected
in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for
. . . credit or insurance to be used primarily for personal, family, or household purposes; employment
purposes; or any other purpose authorized under section 1681b . . . .

15 U.S.C.A. § 1681a(d).

Plaintiff, i.e., information that bore negatively on his "credit worthiness, credit standing, credit capacity, character, general reputation, etc.[11] *See* 15 U.S.C.A. § 1681a(d).

      b.    <u>Actual Damages</u>

Experian also argues that Plaintiff fails to state a plausible claim under § 1681i(a) because he asserts no facts to support a finding that he suffered actual damages.  (doc. 78 at 14.)

To recover under §1681o for an agency's *negligent* noncompliance with § 1681i(a), the plaintiff must have "suffered injury" as a result of the agency's "failure to reinvestigate and record the current status of the disputed information or delete the item from the file."  *Waggoner v. Trans Union, LLC*, No. CIV.A. 302CV1494G, 2003 WL 22220668, at *9 (N.D. Tex. July 17, 2003); *accord Zala*, 2001 WL 210693, at *4; *see also* 15 U.S.C.A. § 1681o.

Plaintiff claims that because Experian continued reporting "false, negative information" about him even after he filed numerous disputes and submitted relevant evidence, he was denied credit (including a mortgage refinance), was "forced to pay [a] much higher interest rate for the credit he could secure," and had difficulty obtaining insurance and employment.[12]  (doc. 34 at 5.) These allegations raise a reasonable inference that Experian negligently failed to correct or delete inaccurate, incomplete, or unverifiable information from Plaintiff's consumer file, and that Plaintiff

---

[11] Some district courts have concluded that identifying information may be disputed under the FCRA. *See e.g.*, *Jones v. Experian Info. Solutions, Inc.*, No. 11 CIV. 9136 CM KNF, 2013 WL 6020794, at *4 (S.D.N.Y. Nov. 12, 2013) (holding that for purposes of her § 1681i(a) claim, the plaintiff "ha[d] established that some of the information contained in [her credit report] [was] inaccurate: her birth date, the spelling of her name, and her address" ); *Waterman v. Experian Info. Solutions, Inc.*, No. CV 12-01400 SJO PLAX, 2013 WL 675764, at *1, 3 (C.D. Cal. Feb. 25, 2013) (denying the motion to dismiss the plaintiff's § 1681e(b) claim where the complaint alleged that the defendant prepared a credit report that "contained inaccurate information, such as a bankruptcy, accounts with [two banks], *and the wrong date of birth*") (emphasis added).  This result is consistent with the Fifth Circuit's finding that the "FCRA is to be liberally construed in favor of the consumer."  *See Wagner v. TRW, Inc.*,139 F.3d 898, 898 (5th Cir. 1998) (per curiam) (citation omitted).

[12] Although he makes these assertions in the section relating to his defamation claim, they may be liberally construed as also applying to his claim under § 1681i(a), given his repeated statements that he "incorporates and alleges the allegations made" throughout the complaint.  (*See* doc. 34 at 5, 6, 8); *see also Miller*, 636 F.2d at 988 (*pro se* complaints are subject to liberal construction).

suffered actual damages as a result. *See Williams*, 2009 WL 3719407, at *4 (finding that the plaintiff's allegations that the defendant's "continuous dissemination" of "erroneous, inaccurate, and fraudulent data regarding his personal, financial, and business transactions" "led to a denial of credit, refinancing, and opening of a checking account" were sufficient to state a claim and show "an entitlement to relief" under § 1681i(a)).[13]

   c. <u>Experian's Reinvestigation</u>

  According to Experian, any claim under § 1681i(a) must be dismissed because Plaintiff concedes "that Experian conducted a reinvestigation into his dispute." (doc. 78 at 12.)

  The second amended complaint asserts that after Plaintiff filed yet another dispute with Experian in September 2012, "Experian notified the other Defendants that a dispute had been filed and they were required to do an investigation." (doc. 34 at 4.)  On October 24, 2012, Experian allegedly sent him "the results of [its own] investigation," which showed that "none of the other Defendants" had made any corrections and that Experian still maintained "two different credit reports." (*Id.* at 5.)  Although he submitted documents to verify his personal information, Experian "refuse[d] to recognize these documents" and continued to knowingly report "grossly inadequate information." (*Id.* at 4.)  He contends that Experian's failure to delete or correct the disputed

---

[13] Plaintiff also claims that Experian's noncompliance was willful since it "refuse[d] to recognize" the legal documents he submitted and chose instead to continue reporting "grossly inaccurate information." (doc. 34 at 4, 6.) Section 1681n provides that in the case of willful noncompliance, the consumer may recover *either* "actual damages sustained by the consumer *or* [statutory] damages of not less than $100 and not more than $1,000 . . . *or* . . . punitive damages as the court may allow." 15 U.S.C.A. § 1681n(a)(1)–(3) (emphasis added). Although the Fifth Circuit has not yet decided whether a consumer must show actual damages as a prerequisite to recover statutory or punitive damages, some courts have concluded that no such showing is required. *See, e.g.*, *White v. Imperial Adjustment Corp.*, No. CIV.A. 99-3804, 2002 WL 1809084, at *6 (E.D. La. Aug. 6, 2002) (holding that a "plaintiff may recover statutory damages for willful violations, [under] § 1681n(a)(1)(A), *or in the alternative*, actual damages, as well as punitive damages"), *aff'd in part and remanded in part on other grounds*, 75 F. App'x 972 (5th Cir. 2003) (emphasis added); *see also Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998) (holding that "actual damages are not a statutory prerequisite" to a claim for punitive damages under the FCRA) (citation omitted); *Ashby v. Farmer's Ins. Co.*, 592 F. Supp. 2d 1307, 1317 (D. Or. 2008) (same with respect to statutory damages).

information shows that it "ha[d] not done a reasonable investigation of [his] disputes." (*Id.* at 6.) These allegations contest not the existence, but the *reasonableness* of Experian's reinvestigation.

In conclusion, because the factual allegations in the second amended complaint state a plausible claim that Experian is liable for the misconduct alleged under § 1681i(a), Experian's Rule 12(c) motion regarding this claim should be denied.

**2.     *Section 1681e(b): Reasonable Procedures to Assure Maximum Possible Accuracy***

Experian next argues that Plaintiff's claim under § 1681e(b) that it failed to adopt and follow reasonable procedures to assure maximum possible accuracy of his consumer report is subject to dismissal because the claim is conclusory and factually unsupported. (doc. 78 at 15–17.)

Pursuant to the FCRA, "[w]henever a credit reporting agency prepares a consumer report it [must] follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C.A. § 1681e(b). To recover for violations of § 1681e(b), "a plaintiff must demonstrate that an inaccuracy in her credit report resulted from [the agency's] negligent or willful failure to use reasonable procedures when the report originally was prepared, not upon reinvestigation." *Waggoner*, 2003 WL 22220668, at \*6. "Mere imprecision does not render information inaccurate." *Toliver v. Experian Info. Solutions, Inc.*, No. CIV.A. H-12-2436, 2013 WL 5308281, at \*4 (S.D. Tex. Sept. 19, 2013); *see also Wagner*, 139 F.3d at 898 (distinguishing between accuracy and "maximum possible accuracy"). Rather, "[a] credit entry may be 'inaccurate' within the meaning of [§ 1681e(b)] either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998). A negligent failure to utilize reasonable procedures subjects the agency to actual damages resulting

from its failure, court costs, and reasonable attorney's fees.  15 U.S.C.A. § 1681o; *Pinner*, 805 F.2d at 1262.  If the agency's failure is willful, it may also be subject to statutory and punitive damages.  15 U.S.C.A. § 1681n(a)(2); *Pinner*, 805 F.2d at 1262.

      a.      Inaccurate Information

As with the previous claim, Experian contends that Plaintiff's claim under § 1681e(b) should be dismissed because he fails to identify any inaccuracies in his credit report.  (doc. 78 at 16.)

Plaintiff claims that he obtained a credit report from Experian that included the wrong birth date and incorrectly showed that he had no or limited credit history.  (doc. 34 at 3.)  Although another report provided the correct date of birth, it also included "negative incorrect information" furnished by the other Defendants.  (*Id.* at 4.)  Even after Plaintiff made numerous attempts to correct the errors, Experian continued to maintain and disseminate two different and inaccurate reports.  (*Id.* at 3–5.)  The credit report showing that he had no or limited credit history could reasonably be said to be either "patently incorrect" or "misleading in such a way and to such an extent that it [could] be expected to adversely affect credit decisions."  *See Sepulvado*, 158 F.3d at 895.  In addition, his allegation that Experian maintained and disseminated two reports containing different identifying and credit information, in itself, states a plausible claim that there were "inaccuracies" in his consumer report.  *See, e.g.*, *Morris v. Credit Bureau of Cincinnati, Inc.*, 563 F. Supp. 962, 967–68 (S.D. Ohio 1983) (analyzing the existence of two separate credit reports containing different personal and credit information about the same consumer as being an inaccuracy for purposes of § 1681e(b)).  The second amended complaint asserts enough facts to permit a reasonable inference to be drawn that Experian included inaccuracies in Plaintiff's credit report for purposes of his § 1681e(b) claim.

b.      Failure to Follow Reasonable Procedures (Negligence)

According to Experian, "Plaintiff also fails to plead any facts supporting the claim that Experian did not use reasonable procedures in assembling his credit report" or that "Experian acted negligently."[14]  (doc. 78 at 16–17.)

The Fifth Circuit has held that "[s]ection 1681e(b) does not impose strict liability for any inaccurate credit report, but only a duty of reasonable care in preparation of the report." *Thompson v. San Antonio Retail Merchs. Ass'n*, 682 F.2d 509, 513 (5th Cir. 1982); *accord Pinner*, 805 F.2d at 1262. "The standard of conduct by which the trier of fact must judge the adequacy of agency procedures is what a reasonably prudent person would do under the circumstances." *Thompson*, 682 F.2d at 513.

Plaintiff claims that he obtained a credit report compiled by Experian containing the wrong date of birth and erroneously showing that he had no or limited credit history.  (doc. 34 at 3–4.)  On July 5, 2011, he sent Experian a letter disputing the accuracy of that report.  (*Id.* at 3.)  Experian sent him a revised report that, while not completely accurate, did contain "a lot of correct information" on July 27, 2011.  (*Id.*)  By April and October 2012, however, Experian was again disseminating reports that contained inaccurate personal and credit information.  (*Id.* at 4–5.)  These allegations raise a reasonable inference that the incorrect date of birth and credit history contained in the credit reports generated after July 2011 (when Plaintiff disputed and Experian corrected these errors) resulted from Experian's failure to adopt and utilize reasonable procedures to assure maximum possible accuracy of information reported about Plaintiff.  *See, e.g.*, *Lazarre*, 780 F. Supp. 2d at

---

[14]  Experian further contends that Plaintiff has failed to plead any facts showing that it acted willfully.  (doc. 78 at 17.)  Because Plaintiff can recover actual damages for a negligent violation under § 1681o, it is not necessary that he plead or show that Experian acted willfully.

1336 ("if a consumer notifies a [consumer reporting agency] [that] the information in his file is inaccurate, and the [agency] either conducts no reinvestigation or conducts an unreasonably cursory reinvestigation in violation of § 1681i(a), then *any subsequent report* containing the same disputed information would, necessarily, not have been 'prepare[d] ... follow[ing] reasonable procedures to assure maximum possible accuracy'") (citing § 1681e(b)) (emphasis added); *Morris*, 563 F. Supp. at 968 (finding that the "defendant was negligent" for purposes of § 1681e(b) "in that it failed to follow reasonable procedures to assure maximum possible accuracy of information about the plaintiff" where, after the plaintiff filed a dispute, the defendant deleted the inaccurate information and combined the two different consumer files it maintained on the plaintiff, but later reinserted and reported again that information).

In conclusion, because Plaintiff's allegations raise a right to relief under § 1681e(b) above the speculative level, Experian's Rule 12(c) motion regarding this claim should be denied.

## B.   Defamation

Experian also moves for judgment on the pleadings regarding Plaintiff's claim for defamation on grounds that he fails to state a claim, and in the alternative, that the claim is preempted by the FCRA.  (doc. 78 at 10.)

### 1.   *Elements of a Defamation Claim*

Under Texas law, "[d]efamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (citing *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.)).  "Defamatory statements are 'published' if they are communicated to a third party capable of understanding their defamatory connotation and in such a way that the third

-14-

party did so understand." *Crouch v. J.C Penney Corp., Inc.*, 564 F. Supp. 2d 642, 646 (E.D. Tex. 2008), *aff'd*, 337 F. App'x 399 (5th Cir. 2009). "A statement is defamatory if it exposes a person to 'public hatred, contempt or ridicule, or financial injury or if it impeaches any person's honesty, integrity, virtue, or reputation.'" *Shaunfield v. Bank of Am.*, No. 3:12-CV-3859-B, 2013 WL 1846885, at *3 (N.D. Tex. Apr. 24, 2013) (citing *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.—Dallas 2003, no pet.)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 1997). Generally, a plaintiff who is a private individual (such as Plaintiff in this case) must show that the defendant acted negligently regarding the truth of the defamatory statement at the time that he published it. *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 595–96 (5th Cir. 2007) (citing *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).

## 2.   *Federal Preemption*[15]

"Federal preemption is an affirmative defense that a defendant must plead and prove." *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012) (citing *Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). "Unless the complaint itself establishes the applicability of a federal-preemption defense—in which case the issue may properly be the subject of a Rule 12(b)(6) motion—a defendant should ordinarily raise preemption in a Rule 12(c) motion for judgment on the pleadings or a Rule 56 motion for summary judgment." *Id.* (internal citation omitted). Here, the Court may consider this defense because it has been raised in a Rule 12(c) motion and because the applicability of FCRA preemption appears on the face of Plaintiff's complaint. *See id.*; *see also*

---

[15]   There are three types of federal preemption: (1) express preemption, (2) field preemption, and (3) conflict preemption. *Simmons v. Sabine River Auth. Louisiana*, 732 F.3d 469, 473–74 (5th Cir. 2013) (citing *Kurns v. R.R. Friction Prods. Corp.*, —— U.S. ——, 132 S. Ct. 1261, 1265–66 (2012)). Express preemption is implicated here because the issue is whether the language of the FCRA preempts Plaintiff's state law claims. *See Castro v. Collecto, Inc.*, 634 F.3d 779, 785 (5th Cir. 2011) ("Congress [] expressly preempt[s] state law in federal statutory language . . . .").

*Barzelis v. Flagstar Bank, F.S.B.*, No. 4:12-CV-611-Y, 2013 WL 3762893, at *2 (N.D. Tex. Feb. 19, 2013) ("Therefore, if [the plaintiff's] allegations on their face are preempted by [federal law], the Court may dismiss those claims under Rule 12(b)(6).")

The FCRA contains two preemption provisions that are applicable to Plaintiff's claims.  The first is § 1681h(e), enacted in 1970 as part of the original legislation, which provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report *except as to false information furnished with malice or willful intent to injure such consumer*.

15 U.S.C.A. § 1681h(e) (West 1997) (emphasis added).  As courts have noted, by its plain language, "§ 1681h(e) preempts only a narrow class of tort claims where a plaintiff does not meet the heightened standard of malice or willfulness." *Pachecano v. JPMorgan Chase Bank Nat. Ass'n*, No. SA-11-CV-00805-DAE, 2013 WL 4520530, at *4 (W.D. Tex. Aug. 26, 2013); *Meisel v. USA Shade & Fabric Structures Inc.*, 795 F. Supp. 2d 481, 486 (N.D. Tex. 2011).

The second provision, § 1681t(b), was added by Congress to the FCRA in 1996 pursuant to the Consumer Credit Reporting Reform Act.  *Meisel*, 795 F. Supp. 2d at 486.  The relevant preemption section provides:

> No requirement or prohibition may be imposed under the laws of any State—
>
> (1) with respect to any subject matter regulated under—
> (F) section 1681s–2 of this title, relating to the responsibilities of persons who

furnish information to consumer reporting agencies, except[16] . . . .

15 U.S.C.A. § 1681t(b)(1)(F) (West 2011).  Because, in contrast to § 1681h(e), "§ 1681t(b)(1)(F) appears to expansively preempt *all* causes of action 'imposed under the laws of any State' pertaining to the duties of information furnishers under [§ 1681s-2]," "[c]ourts have [] struggled to reconcile the two provisions." *Pachecano*, 2013 WL 4520530, at *5 (emphasis in original); *see also Floyd v. Wells Fargo Home Mortgage Co.*, 848 F. Supp. 2d 635, 643 (E.D. La. 2012) ("Thus, while Section 1681t(b)(1)(F) appears to preempt all state law claims, Section 1681h(e) appears to permit a defamation action in situations involving malice or willful intent to injure.").  Of the three approaches that have developed, courts in the Northern District of Texas that have expressly ruled on the issue have adopted the "statutory" approach.  It "construes section 1681t(b)(1)(F) narrowly to preempt only those claims arising under state statutory law, and recognizes section 1681h(e) as a federal defense to those state common-law claims not alleged, or proved, to be the product of malice or willful intent." *Meisel*, 795 F. Supp. 2d at 490– 91; *Carlson*, 259 F. Supp. 2d at 521.[17]

The Court agrees that the "statutory" approach is a proper construction of §§1681t(b)(1)(F) and 1681h(e).  As courts have noted, "[i]n the 1996 amendment, Congress did not remove or alter the original 1970 [§ 1681h(e)] preemption provision." *Pachecano*, 2013 WL 4520530, at *4;

---

[16] Section 1681t(b)(1)(F) exempts from its reach § 54A(a) of Chapter 93 of the Massachusetts Annotated Laws and § 1785.25(a) of the California Civil Code. *See* 15 U.S.C.A. § 1681t(b)(1)(F).  These state statutes impose analogous reporting requirements on furnishers as those imposed by § 1681s-2.  *Carlson v. Trans Union LLC*, 259 F. Supp. 2d 517, 521 (N.D. Tex. 2003).  Specifically, the Massachusetts law requires information furnishers to follow "reasonable procedures to ensure that the information reported to a consumer reporting agency is accurate and complete" and "forbids furnishers to knowingly provide false information to a consumer reporting agency." *Id.* (citing Mass. Ann. Laws ch. 93, § 54A(a)).  Similarly, the California statute "also deals with inaccurate or incomplete information in a credit report and closely follows the requirements of § 1681s-2." *Id.* (citing Cal. Civ. Code § 785.25(a)).

[17] The other two approaches are: (1) "total preemption," which provides that § 1681t(b)(1)(F) preempts *all* state-law claims, even violations of state common law done with willfulness or malice; and (2) "temporal preemption," which holds that § 1681t(b)(1)(F) preempts claims arising *after* a furnisher of information receives notice of a consumer's dispute, while §1681h(e) preempts claims that accrue *prior* to that notice.  *See Pachecano*, 2013 WL 4520530, at *5–6; *Meisel*, 795 F. Supp. 2d at 489–91.

*Meisel*, 795 F. Supp. 2d at 491("[t]here simply is no indication that section 1681t(b)(1)(F) was intended to repeal section 1681h(e) and completely preempt all state law claims").  Further, "the statute[s'] plain language supports applying section 1681t(b)(1)(F) to state statutory law and section 1681h(e) to state common law torts."[18] *Meisel*, 795 F. Supp. 2d at 491.  Most importantly, even after Congress added § 1681t(b)(1)(F) the FCRA in 1996, the Fifth Circuit has continued to allow common law claims to be brought against credit reporting agencies and information furnishers based on allegations that they acted with willfulness or malice.  *See. e.g.*, *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 470–471 (5th Cir. 2006) (acknowledging that § 1681h(e) allowed the plaintiff to assert a libel claim "with respect to the reporting of . . . *false information furnished with malice or willful intent to injure such consumer*," but affirming summary judgment for the defendant because the plaintiff did not proffer any evidence to shown it published the allegedly false information with malice or willful intent to injure him) (emphasis added); *Young v. Equifax Credit Information Services*, 294 F.3d 631, 638 (5th Cir. 2002) ("The FCRA preempts state law defamation or negligent reporting claims *unless* the plaintiff consumer proves 'malice or willful intent to injure' him.") (citing § 1681h(e)) (emphasis added); *Cousin*, 246 F.3d at 367 (to same effect).[19]

In conclusion, § 1681t(b)(1)(F) does not preempt Plaintiff's defamation claim, and § 1681h(e) preempts it only if he fails to plead that Experian acted with malice or willful intent to

---

[18]  The court in *Meisel* reached this conclusion based on the following explanation found in C*arlson*: Section 1681h(e) clearly applies to torts. The section specifically references "any action or proceeding *in the nature of* defamation, invasion or privacy, or negligence." 15 U.S.C. § 1681h(e). All claims in the (non-exclusive) list are torts. Section 1681t(b)(1)(F) gives every indication of dealing only with state statutory regulation. This is made yet more clear when you consider the two [state] laws that are specifically excluded from § 1681t(b)(1)(F)'s coverage.–2.
*Carlson*, 259 F. Supp. 2d  at 521 (emphasis in *Carlson*).

[19]  Notably, none of these cases discuss or even address § 1681t(b)(1)(F) and the apparent conflict between this provision and § 1681h(e).

injure him. *See* 15 U.S.C.A. §§ 1681t(b)(1)(F) and 1681h(e); *Meisel*, 795 F. Supp. 2d at 491; *see also Morris*, 457 F.3d at 470–71; *Young*, 294 F.3d at 638.

### 3.    *Malice and Willfulness Standards*

Because "the FCRA does not define malice," the Fifth Circuit has "applied the common-law standard," which requires the plaintiff to show that the defendant "published the false statements about [him] knowing the statements were false or with reckless disregard of whether they were false." *Morris*, 457 F.3d at 471 (citing *Cousin*, 246 F.3d at 375). Reckless disregard means that "the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Accordingly, "[n]egligence, lack of investigation, or failure to act as a reasonably prudent person are insufficient to show actual malice." *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 313 (5th Cir. 1995) (citation omitted). Lastly, "[t]he term 'willful' in [the FCRA] context has been interpreted to require that a defendant knowingly and intentionally commit an act in conscious disregard to the rights of others." *Rivera v. Countrywide Fin. Corp.*, No. 1:04CV103, 2006 WL 2431391, at *4 (S.D. Miss. Aug. 21, 2006) (citation omitted); *Zala*, 2001 WL 210693, at *8.

### 4.    *Plaintiff's Allegations*

Plaintiff allegedly obtained a credit report from Experian that listed the wrong date of birth and incorrectly stated that he had no credit history. (doc. 34 at 3.) He filed disputes and submitted legal documents to Experian in efforts to rectify these errors for several years, but to no avail. (*Id.*) Finally, following a dispute he filed on July 5, 2011, Experian compiled a report on July 27, 2011, that "far from being totally accurate," "did show a lot of correct information." (*Id.*) By April 30, 2012, however, Experian "had deleted all the correct[] information" and reinserted the inaccurate

items.  (*Id.* at 4.) As of October 24, 2012, Experian refused to acknowledge Plaintiff's proffered documents and continued disseminating two different, erroneous reports.  (*Id.* at 4–5.)  Plaintiff claims that over the course of several years, Experian "sent numerous copies" of these reports "to financial institutions, insurance companies, and [prospective] employers . . . even though [it] [knew] the information [was] incorrect."  (*Id.* at 4.)  As a result, he was denied credit, including a mortgage refinance, was assessed higher interest rates on the credit he did obtain, and encountered difficulty purchasing insurance and obtaining employment.  (*Id.* at 5.)

Taken as true for purposes of Experian's motion, Plaintiff's allegations raise a reasonable inference that Experian published false credit information about him to third parties, and this caused him financial injury and harmed his credit reputation.  In addition, the allegations state a plausible claim that Experian acted with malice because it knew that the credit reports it disseminated after July 2011 contained false information about Plaintiff—given that by that time Experian had in its possession legal documents verifying Plaintiff's personal information and had even published a relatively accurate report.  (*See id.* at 3–5.)  In sum, Plaintiff states a plausible defamation claim against Experian, and the claim is not preempted by §1681h(e).  *See Meisel*, 795 F. Supp. 2d at 488 (holding that §1681h(e) did not preempt the plaintiff's defamation claim because "if true," his allegations that the defendant "[was] aware that the statements published about [him] were false at the time the publication occurred," given that "both [he] and [a third party] made multiple efforts to communicate to [the defendant] that the report of fraudulent activity was false," "would be sufficient to support a finding of malice").

**C.**   **Tex. Bus. & Comm. Code §§ 20.06(d),(e)**

Section 20.06 of the Tex. Bus. & Comm. Code "establishes procedures that consumer

reporting agencies must follow in responding to consumer complaints." *Ewbank v. ChoicePoint Inc.*, 551 F. Supp. 2d 563, 568 (N.D. Tex. 2008). If the consumer disputes "the completeness or accuracy of information contained in [his] file" with a consumer reporting agency, the agency must "reinvestigate the disputed information free of charge and record the current status of the disputed information not later than the 30th business day after the date on which the agency receives the notice." Tex. Bus. & Com. Code Ann. § 20.06(a) (West 2003); *Gore v. Experian Info. Solutions, Inc.*, No. CIV. 303CV2949H, 2004 WL 1969759, at *3 (N.D. Tex. Sept. 7, 2004), *aff'd*, 132 F. App'x 561 (5th Cir. 2005). The agency must delete from the consumer's file disputed information that it finds to be inaccurate or it is unable to verify, and must provide a revised report to the consumer "and to each person who requested the consumer report within the preceding six months." Tex. Bus. & Com. Code Ann. § 20.06(d). Lastly, "[i]nformation deleted under Subsection (d) may not be reinserted in the consumer's file unless the [furnisher] . . . reinvestigates and states in writing or by electronic record to the agency that the information is complete and accurate." *Id.* § 20.06(e). A violation of § 20.06 subjects the consumer reporting agency to liability under § 20.09, which determines the amount of damages awarded to an aggrieved consumer based on whether the agency's conduct was negligent or willful. *See id.* § 20.09(a)–(b); *Gore*, 2004 WL 1969759, at *3.

### 1.    Preemption

Experian first contends that § 1681h(e) preempts state law claims that are based on "negligent reporting," and Plaintiff's claims under the Tex. Bus. & Comm. Code are preempted because "he does not allege malice or include any facts that could support a finding of malice or willful intent" by part of Experian. (doc. 78 at 18.)

Plaintiff's claims under the Tex. Bus. & Comm. Code are not preempted by § 1681h(e) of

the FCRA because this section preempts certain torts rather than statutory claims.  *See Meisel*, 795

F. Supp. 2d at 490– 91; *Carlson*, 259 F. Supp. 2d at 521.  Moreover, as discussed with regard to his

defamation claim, Plaintiff has stated sufficient facts to raise a reasonable inference that Experian

acted with malice when it failed to conduct a reasonable reinvestigation into his September 2012

dispute and permanently delete the incorrect personal and credit information from his consumer file.

(*See* doc. 34 at 3–5.)  Accordingly, even if § 1681h(e) preempted Plaintiff's Tex. Bus. & Comm.

Code claims against Experian to the extent they were based on "negligent reporting," given his

plausible claim that Experian acted with malice, the claims are not preempted.  Experian's motion

for judgment on the pleadings should therefore be denied on this basis.

### 2.      *Failure to State a Claim*

Experian also argues that even if Plaintiff's claims under the Tex. Bus. & Comm. Code are

not preempted, they are still subject to dismissal because they are factually unsupported.  (doc. 78

at 17–19.)

Plaintiff alleges that after he disputed inaccurate items on his credit report on July 5, 2011,

and submitted relevant documents, Experian compiled a report that corrected many of the errors on

July 27, 2011.  (doc. 34 at 3.)  By April 30, 2012, however, his credit report had "changed again",

and all of the correct information had been deleted and the inaccurate items had been reinstated.  (*Id.*

at 3–4.)  In September 2012, he realized that Experian maintained two credit reports, including one

that had the wrong date of birth and no or limited credit history, and he filed another dispute.  (*Id.*

at 4.)  Experian notified the other Defendants (i.e., the information furnishers) and conducted its own

investigation.  (*Id.* at 4–5.)  Despite Experian's investigation, no furnisher made any changes, and

Experian continued disseminating the two erroneous reports.  (*Id.* at 5.)  He therefore asserts that

Experian violated §§ 20.06,(d),(e) "by failing to follow dispute procedures."  (*Id.* at 6–8.) Taken as true and drawing all the reasonable inferences in Plaintiff's favor, the allegations state a plausible claim that Experian knowingly or negligently reinserted inaccurate information into his consumer file in violation of § 20.06(e) sometime after July 2011, and failed to correct inaccurate information in violation of § 20.06(d) in or after September 2012.  Accordingly, Experian's motion for judgment on the pleadings should be denied on this basis as well.

## D.   <u>Attorney's Fees</u>

Experian last argues that Plaintiff is not entitled to attorney's fees because he is a *pro se* litigant.  (doc. 78 at 19.)

Sections 1681n and 1681o of the FCRA provide for reasonable attorney's fees to a prevailing plaintiff, but "these provisions do not allow *pro se* attorney litigants to recover attorney's fees on their own behalf."  *Morris v. Equifax Info. Servs., LLC*, No. CIV.A. H-04-423, 2005 WL 5976334, at *2 (S.D. Tex. Jan. 19, 2005) (citation omitted).  Here, Plaintiff has not yet prevailed in his claims against Experian.  Ultimately, regardless of the merits, plaintiffs in the Fifth Circuit cannot recover attorney's fees under any type of claim when they proceed on their own behalf.  *See Vaksman v. C.I.R.*, 54 F. App'x 592 (5th Cir. 2002) ("As a *pro se* litigant, [the petitioner] is not entitled to attorney['s] fees because, quite simply, he did not actually 'pay' or 'incur' attorney['s] fees.")  Plaintiff has proceeded *pro se* since filing this case in July 2012.  Experian's motion to dismiss Plaintiff's request for attorney's fees should therefore be granted.  *See Shaunfield*, 2013 WL 1846838, at *4 (dismissing the *pro se* plaintiff's request for attorney's fees).

## IV.  RADIOLOGY, AHFC, & CSI

Plaintiff expressly asserts claims for defamation and violations of § 1681s-2(b) of the FCRA

against Radiology, AHFC, and CSI.   (*See* doc. 34 at 5–7.)   In addition, Radiology and AHFC construe the complaint as asserting claims under §§ 20.006(d),(e) of the Tex. Bus. & Comm. Code. (docs. 44-1 at 11–12; 49 at 4–5); (*see also* doc. 34 at 8).

## A.   FCRA §1681s-2(b): Reasonable Investigation

Radiology, AHFC, and CSI move to dismiss Plaintiff's claim that they failed to conduct a reasonable investigation into his dispute, as they were required to do under § 1681s–2(b), for failure to state a claim.   (docs. 44-1 at 13–14; 49 at 3–4; 60 at 4.)

"Under § 1681s–2(a), furnishers of information may not knowingly provide inaccurate information to consumer reporting agencies."   *Smith*, 2010 WL 3338537, at \*14 (citing 15 U .S.C. § 1681s–2(a)).   Once a furnisher is notified by a consumer reporting agency that the consumer has disputed the completeness or accuracy of information pursuant to § 1681i(a)(2), the furnisher must conduct its own investigation with respect to the disputed item, correct any inaccuracy, and notify the agency of the results of its investigation.   15 U .S.C.A. § 1681s–2(b).   To recover against a furnisher for violations of § 1681s–2(b),[20] a plaintiff must show that: (1) he disputed the accuracy or completeness of information with a consumer reporting agency; (2) the agency notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the investigation.   *Smith*, 2010 WL 3338537, at \*15; *see also* 15 U .S.C. §§ 1681s–2(b); 1681i(a)(2).

---

[20] "The language in the FCRA plainly and unambiguously states that a consumer does not have any remedies available for a claimed violation of § 1681s–2(a)' since it provides that such a violation "'shall be enforced exclusively' by certain federal agencies, and federal and state officials."   *Patterson v. Long Beach Mortgage Co.*, No. CIV.A.3:07CV1602OBH, 2009 WL 4884151, at \*4 (N.D. Tex. Dec. 15, 2009) (citing 15 U.S.C. § 1681 s–2(a),(d)). Because there is no such limitation relating to § 1681s–2(b), "many federal courts in the Fifth Circuit have held that [in contrast to § 1681s–2(a),] § 1681s–2(b) creates a private right of action."   *Davis v. Sallie Mae, Inc.*, CIV.A. No. 3:09-CV-00821, 2009 WL 2525303, at \*3 (N.D. Tex. Aug. 18, 2009) (collecting cases).   While expressly declining to rule on this issue, the Fifth Circuit has noted that "[n]othing in [§ 1681s-2] precludes a private right of action for violation of the investigation and reporting requirements of Section 1681s–2(b)."   *Young*, 294 F.3d at 639.

According to the second amended complaint, Radiology, AHFC, and CSI "supplied" "false negative information" about Plaintiff to Experian. (doc. 34 at 5.) After he filed another dispute with Experian in September 2012, Experian notified them of his dispute and of their obligation to conduct an investigation. (*Id.* at 4.) On October 24, 2012, Experian sent him the results of its investigation, which showed that Radiology, AHFC, and CSI had not made "any changes to the inaccurate information." (*Id.* at 5.) Plaintiff contends that these Defendants therefore "failed to do an adequate investigation" as required by § 1681s-2(b). (*Id.* at 7.) He seeks "actual, consequential, special, incidental, and exemplary damages" pursuant to §§1681n and 1681o. (*Id.*)

Plaintiff fails to specify, and nothing in the complaint indicates, the false, negative information that Radiology, AHFC, and CSI allegedly supplied Experian and that they failed to correct or delete from his credit report. His assertions read more like a recitation of the elements of a § 1681s-2(b) claim than specific allegations of wrongdoing. Therefore, Radiology's, AHFC's, and CSI's motion to dismiss this claim should be granted and the claim should be dismissed with prejudice.[21]  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief.) (citing *Twombly*, 550 U.S. at 555); *Shaunfield*, 2013 WL 1846885, at *2 (dismissing claim where "[t]he pleadings merely recite[d] the elements of a § 1681s–2(b) violation" but failed to "support[] those allegations with adequate factual content").

---

[21] Plaintiff's proposed third amended complaint provides more details about the incorrect information that Radiology, CSI, and AHFC allegedly furnished to Experian. Even if considered here, Plaintiff still fails to state a claim. While some allegations are conclusory, others even contradict a conclusion that relief is warranted under § 1681s-2(b). (*See, e.g.*, doc. 67-2 at 6 (alleging that in November 2012, one month after Plaintiff filed a dispute with Experian, a Radiology employee "responded that he would take care of the problem"), 7 (asserting that CSI "furnished" "false" account numbers to consumer reporting agencies, but failing to assert that Plaintiff disputed the accuracy of these specific accounts in his September 2012 dispute with Experian).

B.    **Defamation**

1.    *Radiology*

Radiology seeks dismissal of Plaintiff's claim for defamation on grounds that it is preempted by the FCRA.  (doc. 44-1 at 8–11.)

As discussed, the FCRA preempts Plaintiff's defamation claim unless he pleads that Radiology furnished false credit information about him to Experian with malice or willful intent to injure him.  *See* 1681h(e); *Morris*, 457 F.3d at 471; *Meisel*, 795 F. Supp. 2d at 491.

According to Plaintiff, "the other Defendants" (presumably including Radiology) supplied Experian with "incorrect and false negative information" about Plaintiff.  (doc. 34 at 5.)  Experian then sent numerous credit reports containing this inaccurate information to "various institutions," such as creditors, insurance companies, and potential employers.  (*Id.*)  As a result of Defendants' "incompetence, negligence, and malfeasance," Plaintiff was denied credit, paid "much higher interest" rates on the credit he did obtain, and encountered difficulty obtaining insurance and employment.  (*Id.*)  He seeks damages that purportedly "accrued over numerous times over the years of false reporting."  (*Id.* at 5–6.)

Even assuming that Radiology furnished to Experian false credit information about Plaintiff, Plaintiff still fails to allege or assert any facts raising a reasonable inference that Radiology knew such information was false, or that it entertained serious doubts about its truth or falsity.  He states only that Radiology's actions constituted "incompetence, negligence, and malfeasance."  (*See id.* at 5.)  Accordingly, the allegations fail to raise a reasonable inference that Radiology acted with malice or willful intent to injure him.  *See  St. Amant*, 390 U.S. at 731; *Zala*, 2001 WL 210693, at *8.  Plaintiff's defamation claim against Radiology is therefore preempted by § 1681h(e) of the

FCRA and should be dismissed. *See Visconti v. Bank of Am.*, No. 4:10CV532, 2012 WL 3779083, at *3 (E.D. Tex. Aug. 31, 2012), *rec. adopted*, 2012 WL 4501808 (E.D. Tex. Sept. 28, 2012) (holding that the plaintiff's defamation claim was preempted by § 1681h(e) where the "Plaintiff ha[d] not alleged any facts that [the] Defendants acted with malice or willful intent to injure [him] when they reported [the allegedly false information] to various credit agencies").

### 2.   *AHFC and CSI*

As with Radiology, the second amended complaint appears to assert that AHFC and CSI provided false, negative information about Plaintiff to Experian. (doc. 34 at 5.) Because Experian disseminated this information to third parties, Plaintiff was allegedly denied credit, paid higher interest on the credit he did secure, and had difficulty obtaining insurance and employment. (*Id.*) Because the allegations do not raise a reasonable inference that AHFC or CSI furnished the allegedly false information with malice or willful intent to injure him, Plaintiff's defamation claim against these Defendants is also preempted. *See Visconti*, 2012 WL 3779083, at *3. Although AHFC and CSI do not move to dismiss Plaintiff's defamation claim on this basis, the Court may *sua sponte* dismiss the claim for the same reason as against Radiology as long as Plaintiff has notice and an opportunity to be heard. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). The fourteen-day time frame for filing objections to the recommended dismissal provides the requisite notice and opportunity to be heard. *See Ratcliff v. Coker*, No. 9: 08CV127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).[22]

---

[22] Plaintiff does not assert any additional facts in his proposed third amended complaint showing that these Defendants acted with malice or with willful intent to injure him at the time that they furnished the allegedly false information. (*See, e.g.*, doc. 67-2 at 7) (stating that Radiology's actions "may have been due to negligence in [its] accounting"). Although he claims that CSI falsely reported "four different account numbers" "with malice and willful intent to harm [him]" (*see id.*), this assertion is a legal conclusion that is not entitled to any deference. *See Vilma v. Goodell*, 917 F. Supp. 2d 591, 596 (E.D. La. 2013) (holding that the plaintiff failed to plead a plausible defamation claim because his allegation that the defendant's statements "were made with reckless disregard of their truth or falsity and/or

**C.** **Tex. Bus. & Comm. Code §§ 20.06(d),(e)**

*1.* *Radiology*

Radiology argues that Plaintiff's claims under the Tex. Bus. & Comm. Code are preempted by § 1681t(b)(1)(F) "because they are based on allegedly inaccurate information that Radiology [] supposedly reported to a credit reporting agency." (doc. 44-1 at 11.)[23]

Section 1681t(b)(1)(F) preempts claims brought under state statutes that seek to impose additional "requirements" or "prohibitions" onto a furnisher's responsibilities under § 1681s-2. *See* 15 U.S.C.A. § 1681t(b)(1)(F); *Meisel*, 795 F. Supp. 2d at 491; *see also Shaunfield*, 2013 WL 1846885, at *2.

Here, the live complaint explicitly asserts claims for violations of §§ 20.06(d),(e) of the Tex. Bus. & Comm. Code against Exeperian only. (*See* doc. 34 at 8.) The only allegations implicating Radiology are that it supplied Experian with false credit information about Plaintiff and failed to conduct a reasonable investigation into his September 2012 dispute, as required by 15 U.S.C. § 1681s-2(b). (*See id.* at 4–5, 7.) To the extent Plaintiff asserts claims against Radiology under Tex. Bus. & Comm. Code §§ 20.006(d),(e), the claims are preempted by the FCRA and should be dismissed. *See Shaunfield*, 2013 WL 1846885, at *2 (dismissing claims under chapter 20 of the Tex. Bus. & Comm. Code; holding that the claims were preempted by § 1681t(b)(1)(F) because the plaintiff "based his § 1681s-2 and Texas statutory claims on the same allegedly wrongful conduct

---

with malice" was conclusory); *Frank v. Delta Airlines, Inc.*, No. CIV. A. 3:00-CV-2772, 2001 WL 910386, at *2 (N.D. Tex. Aug. 3, 2001) (same; explaining that "[w]ithout []specific allegations" that the defendant "entertained doubts as to the accuracy" of the information, the complaint failed to "support a conclusion that [the defendant] acted with actual malice"); *see also Iqbal*, 556 U.S. at 678.

[23] Radiology also contends that § 1681h(e) preempts the claims "because there is absolutely no factual content describing any malice or willful intent to injure [Plaintiff] on the part of Radiology." (doc. 44-4 at 11.) Because the first argument is dispositive, it is not necessary to consider this additional argument.

taken by [the defendant] as a furnisher of information to a credit reporting agency"); *Pachecano*, 2013 WL 4520530, at *6 (same).

 2.   ***AHFC and CSI***

 Plaintiff contends that AHFC and CSI furnished false information about him to Experian and failed to conduct a reasonable investigation into the dispute he filed in September 2012. (*See* doc. 34 at 4–5, 7.) As with Radiology, any claims against AHFC and CSI under the Tex. Bus. & Comm. Code are based entirely on their alleged failure to fulfill their duties under 15 U.S.C. § 1681s-2(b), and are therefore preempted by 15 U.S.C. § 1681t(b)(1)(F). To the extent Plaintiff asserts claims against these Defendants under the Tex. Bus. & Comm. Code, the Court should *sua sponte* dismiss the claims based on preemption. *See Shaunfield*, 2013 WL 1846885, at *2; *see also Carroll*, 470 F.3d at 1177; *Ratcliff*, 2008 WL 4500321, at *3 n. 1.

## V.   RECOMMENDATION

 Radiology's, AHFC's, and CSI's Rule 12(b)(6) motions to dismiss should be **GRANTED,** and all of Plaintiff's claims against them should be dismissed with prejudice. Experian's Rule 12(c) motion for judgment on the pleadings should be **GRANTED in part and DENIED in part,** and Plaintiff's claims against it for defamation and violations of the FCRA and the Tex. Bus. & Comm. Code should be allowed to proceed but his request for attorney's fees should be dismissed.[24]

 **SO RECOMMENDED** on this 20th day of December, 2013.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[24] As noted, Plaintiff has filed a motion for leave to file his third amended complaint. (*See* doc. 67.) Even if considered, the proposed third amended complaint does not save from dismissal any of his claims against Radiology, AHFC, and CSI. Accordingly, no further opportunity to amend as to these defendants is warranted.

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

-30-